UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HEARD,

       Plaintiff,                       CIVIL ACTION NO. 08-13302

       v.                             DISTRICT JUDGE PAUL D. BORMAN

DEBORAH SCOTT[1], CAIN,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
REBESKI, and MAGRO,

       Defendants.[2]
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that defendants violated his constitutional rights. The matter comes before the court on defendants Scott and Magro's Motion for Dismissal and/or Summary Judgment (D/E #19), defendant Cain's Motion to Dismiss and/or for Summary Judgment (D/E #30), plaintiff's Motion for Injunctive Relief (D/E #21),

---

[1] Both the complaint and the docket identify one of the defendants as "Deborah Scott" while that defendant's motion identifies her as "Debra Scutt." Given the docket and the absence of any motion to change the case caption, this Report and Recommendation will use "Scott" as the name for that defendant.

[2] Plaintiff's complaint originally named over one hundred defendants (D/E #1), but the Honorable Paul D. Borman dismissed all of the defendants except for Rebeski, Cain, Magro, and Scott (D/E #5).

plaintiff's Second Motion for Injunctive Relief (D/E #29), and plaintiff's Motion for Default Judgment (D/E #32). For the reasons discussed below, this court recommends that plaintiff's motions for injunctive relief and default judgment be **DENIED**, defendants' motions for dismissal be **GRANTED,** and that all of plaintiff's remaining claims be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

## II. Background

### A. Complaint

As noted above, while plaintiff's complaint named over one hundred defendants, there are only four defendants remaining after Judge Borman's order of partial dismissal (D/E #1, #3). As described in that order of partial dismissal, plaintiff's complaint alleges that Rebeski, a registered nurse, inadequately treated plaintiff for pneumonia and attempted to murder him in January of 2007. Plaintiff also alleges that, on July 15, 2008, Scott, the warden at the G. Robert Cotton Facility (JCF) in Jackson, Michigan, responded to plaintiff's complaints about the conditions of confinement with the statement: "This is what you get; this is what happens when you come to the hole." Plaintiff further alleges that Cain and Magro, who are Correctional Officers at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan, assaulted him on December 8, 2007 and February 26, 2006 respectively.

### B. Motions Before the Court

On December 19, 2008, defendants Scott and Magro filed a motion for dismissal and/or summary judgment based on lack of exhaustion and immunity (D/E #19). In that motion, Scott and Magro argue that plaintiff's claims against them should be dismissed because he failed to

-2-

exhaust his administrative remedies with respect to those claims prior to filing this lawsuit. Scott and Magro also argue that plaintiff's claims against them in their official capacities are barred by their immunity under the Eleventh Amendment to the United States Constitution.

On January 5, 2009, plaintiff filed a motion for injunctive relief (D/E #21). In that motion, plaintiff argues that the attorney general's "goons" have been taking retaliatory actions against him and that other conditions of his confinement are intolerable. As relief, plaintiff requests an evidentiary hearing.

On February 17, 2009, plaintiff filed another motion for injunctive relief (D/E #29). In that motion, plaintiff argues that property was taken from plaintiff during a prison transfer and he requests that the property be returned.

On February 23, 2009, defendant Cain filed a motion for dismissal and/or summary judgment based on lack of exhaustion and immunity (D/E #30). In that motion, Cain argues that plaintiff's claim against him should be dismissed because plaintiff failed to exhaust his administrative remedies with respect to that claim prior to filing this lawsuit. Cain also argues that plaintiff's claim against Cain in his official capacity is barred by Cain's immunity under the Eleventh Amendment to the United States Constitution.

On March 3, 2009, plaintiff filed a motion for default judgment (D/E #32). In that motion, plaintiff argues that MDOC officials at the Ionia Maximum Correctional Facility had launched a campaign of terror, intimidation and obstruction against plaintiff. Specifically, plaintiff alleges that the officials destroyed plaintiff's legal materials for litigation relating to

inmates on death row in Ohio. Plaintiff also requests that either that property be returned or that plaintiff be compensated for his four and a half years of litigation in the death row case.

On March 11, 2009, plaintiff filed his response to both of defendants' motions (D/E #33). In that response, plaintiff asserts that defendants continue to violate plaintiff's right to redress, that documents pertaining to exhaustion possessed by defendants have come up missing, and that the court should order defendants to explain why the documents have come up missing. Plaintiff also requests that defendants be ordered to account for their deliberate, egregious, callous, and malicious acts. Plaintiff further requests that default judgment be entered against defendants due to their obstruction of justice.

### III. Discussion

#### A. Defendants' Motions

**1. Standards of Review**

**a. Summary Judgment**

Defendants Scott, Magro, and Cain all move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b). That rule states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**b. Dismissal**

Defendants Scott, Magro, and Cain also move for dismissal of plaintiff's claims against them in their official capacity pursuant to Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "factual allegations contained in a complaint must raise a right to relief above the speculative level" Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That does not "require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). See also CBC Companies, Inc. v. Equifax, Inc., 561 F.3d 569, 571 (6th Cir. 2009). In its review, the court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett, 528 F.3d at 430.

### 2. Exhaustion of Administrative Remedies

Defendants Scott, Magro, and Cain argue that plaintiff's claims are barred because he failed to properly exhaust all of his administrative remedies prior to bringing this action. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such

exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

In this case, the administrative procedure applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances." (MDOC PD 03.02.130; attached as Exhibit C to D/E #19)[3] Pursuant to that policy directive, the MDOC grievance process consists of three steps: a Step I grievance filing setting forth the issue being grieved and identifying the persons involved in the issue after an unsuccessful attempt at a verbal resolution. If the inmate is dissatisfied with the Step I response to his grievance, he may file a Step II appeal; which is followed by a Step III grievance appeal in the event he is dissatisfied with the Step II grievance response. (MDOC PD 03.02.130, ¶¶ P, R, V, BB; attached as Exhibit C to D/E #19)

All grievances pursued through all three steps of the MDOC grievance process are recorded are logged in a computerized grievance tracking system. (MDOC PD 03.02.130, ¶ GG; attached as Exhibit C to D/E #19) The grievance inquiry for plaintiff, provided by defendants,

---

[3]This court would note that the policy directive provided by defendants had an effective date of July 9, 2007, which is a date subsequent to the alleged actions of Rebeski or Magro. However, the general three-step MDOC grievance process was the same prior to that date, see, e.g., Jones v. Bock, 549 U.S. 199, 206-207, 127 S.Ct. 910, 916, 166 L.Ed.2d 798 (2007), and, as discussed below, plaintiff clearly failed to exhaust his administrative remedies as to all defendants.

demonstrates that plaintiff only completed the grievance process with respect to one grievance: MDOC Grievance No. RCF-2006-01-41-17a. (Grievance Inquiry Printout; attached as Exhibit A to D/E #19) That grievance, filed in 2006, involved plaintiff's claim that the kitchen staff at the Riverside Correctional Facility had harassed and discriminated against him in January of 2006. (Grievance No. RCF-2006-01-41-17a; attached as Exhibit B to D/E #19)

In his response, plaintiff asserts that defendants continue to violate plaintiff's right to redress, that documents pertaining to plaintiff's Step I grievances that were possessed by defendants have come up missing, and that the court should order defendants to explain why the documents have come up missing. Plaintiff also requests that defendants be ordered to account for their deliberate, egregious, callous, and malicious acts. However, plaintiff provides no evidence that anything was taken and there is nothing in grievance tracking system regarding any other completed claims. Plaintiff did attach affidavits to both his complaint and his response to defendants' motions for summary judgment which stated that the MDOC grievance coordinator failed to respond to plaintiff's Step I grievances (D/E #1) and that, while defendants possessed plaintiff's exhaustion documents, those documents have now gone missing (D/E #33). However, even if plaintiff's Step I grievances were not responded to, PD 03.02.130 expressly provided that an inmate may appeal to Step II if he does not receive a response to a Step I grievance (PD 03.02.130, ¶ BB) and, even if plaintiff's conclusory statement that some unidentified documents relating to exhaustion have gone missing is believed, plaintiff still does not assert that he pursued any relevant grievance through Step III. Therefore, plaintiff's conclusory allegations do not demonstrate that a genuine issue is in dispute with respect to exhaustion.

The United States Supreme Court expressly held in Woodford that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386. In this case, plaintiff failed to comply with the applicable grievance procedures because he failed to pursue any grievances regarding the claims in his complaint through all the steps of the MDOC grievance process. The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923. In this case, plaintiff has failed to properly exhaust his administrative remedies with respect to his claims against defendants and the benefits of the exhaustion requirement have not be met. Therefore, his complaint should be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).[4]

**3. Claims Against Defendants in their Official Capacities**

Even if plaintiff did properly exhaust his administrative remedies. the Eleventh Amendment bars plaintiffs claims against defendants to the extent defendants are sued in their official capacities. The Eleventh Amendment provides:

---

[4]As noted above, defendant Rebeski has not been served and did not bring a motion arguing that plaintiff's claim should be dismissed pursuant to 42 U.S.C. § 1997e(a). However, the other defendants have provided this Court with the one grievance plaintiff did fully exhaust and that grievance does not involve Rebeski. Thus, had Rebeski been served, he would be entitled to dismissal.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress from defendants for past violations of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against defendants are brought against them in their official capacities, the claims are barred by the Eleventh Amendment.

### **C. Plaintiffs' Motions for Injunctive Relief**

As discussed above, plaintiff filed two motions for injunctive relief. In plaintiff's first motion for injunctive relief, plaintiff seeks an evidentiary hearing regarding alleged retaliatory actions taken by the attorney general's "goons" as well as relief from other conditions of his confinement (D/E #21). In plaintiff's second motion for injunctive relief, plaintiff seeks the return of the property, relating to both this case and another case, that was allegedly taken from plaintiff during a prison transfer (D/E #29).

Both of plaintiff's motions were made pursuant to Fed. R. Civ. P. 65. Fed. R. Civ. P. 65 provides:

> (a) Preliminary Injunction.
>
> (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
>
> (b) Temporary Restraining Order.
>
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will

result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 10 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) Contents. Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) Other Laws Not Modified. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. § 2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) Copyright Impoundment. This rule applies to copyright-impoundment proceedings.

In deciding whether to issue a preliminary injunction or temporary restraining order, a district court must consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting

the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest. Northeast Ohio Coalition for the Homeless v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006); Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir. 2001). "A preliminary injunction is an extraordinary remedy designed to preserve the relative positions of the parties until a trial on the merits can be held. Whether to grant a preliminary injunction is a matter within the discretion of the district court and is thus reviewed for abuse of discretion." Tennessee Scrap Recyclers Ass'n v. Bredesen, 556 F.3d 442, 447 (6th Cir. 2009).

Here, plaintiff is not entitled to the injunctive relief he seeks and his motions should be denied. As discussed above, plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit and, therefore, he is not going to succeed on the merits of his claims. Additionally, while plaintiff asserts that he will suffer irreparable harm if his motions are not granted, he provides no evidence supporting such claims and several of plaintiff's allegations would be more properly brought as a motion to amend the complaint. Moreover, plaintiff's request for an evidentiary hearing merely serves as a discovery request for the potential claims that arose following the filing of his complaint and discovery has been stayed in this case (D/E #17). Defendants did not provide any response to plaintiff's motions and there is no indication that they would be substantially harmed, but plaintiff's motions should still be denied in light of the substance of his requests and the fact plaintiff's entire complaint should be dismissed due to lack of exhaustion.

### **D. Plaintiff's Motion for Default Judgment**

Plaintiff requests that default judgment be entered against defendants pursuant to Fed. R. Civ. P. 55.  With respect to default judgments, Fed. R. Civ. P. 55 provides:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

> (c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).
>
> (d) Judgment Against the United States. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

In this case, plaintiff seeks default judgment against defendants on the basis that MDOC officials at the Ionia Maximum Correctional Facility have launched a campaign of terror, intimidation and obstruction against plaintiff, including the destroying of plaintiff's legal materials for litigation relating to inmates on death row in Ohio. Plaintiff also requests that either that property be returned or that plaintiff be compensated for his four and a half years of litigation in the death row case.

Given plaintiff's arguments, it appears that he is seeking default judgment pursuant to Fed. R. Civ. P. 55 on the basis of misconduct. However, such a default judgment would not be entered pursuant to Fed. R. Civ. P. 55 and, instead would be made pursuant to Fed. R. Civ. P. 11 or the inherent power of the court. Under Rule 11 of the Federal Rules of Civil Procedure, the court has discretion to award sanctions (1) when a party presents pleadings, motions or papers to the court for an improper purpose, (2) if the claims, defenses or other legal contentions therein are not warranted by existing law or a nonfrivolous extension of the law, or (3) if the allegations and other factual contentions therein do not have evidentiary support. Fed. R. Civ. P. 11; see First Bank v. Hartford Underwriters Ins. Co., 307 F.3d 501, 510 (6th Cir. 2002). The test for imposition of Rule 11 sanctions is whether the litigant's conduct was reasonable under the

circumstances. United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 507 (6th Cir. 1998).

With respect to the inherent power of courts, the United States Supreme Court in Chambers v, NASCO, Inc., it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991) quoting United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). Moreover, "[i]t is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice." Smith v. C.I.R., 926 F.2d 1470, 1475 (6th Cir. 1991) (citations omitted).

In light of his motion, plaintiff's motion for default judgment should be denied. Plaintiff makes no allegations, and provides no evidence, of misconduct by the specific defendants remaining in this case. Moreover, the majority of his arguments appear to involve another case; *i.e.* the litigation that plaintiff is apparently taking part in relating to death row inmates in Ohio.

### V. Conclusion

For the reasons discussed above, the court recommends that plaintiff's motions for injunctive relief and default judgment be **DENIED**, defendants' motions for dismissal be **GRANTED,** and that all of plaintiff's remaining claims be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 20, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties via the Court's ECF System and/or U. S. Mail on May 20, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan